UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS R. BURGOYNE, | Case No. 09-11056 |
| Plaintiff, | DISTRICT JUDGE ARTHUR J. TARNOW |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE DONALD A. SCHEER |
| Defendant. _____/ | |

### ORDER REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [20], DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18], GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15], AND REMANDING THE CASE TO A DIFFERENT ADMINISTRATIVE LAW JUDGE TO RENDER A DECISION CONSISTENT WITH THIS ORDER

On March 19, 2009, Plaintiff, a Navy veteran, filed suit seeking judicial review of the Commissioner's decision disallowing his claim for Social Security benefits. Pursuant to Local Rule 72.1(b)(3), "all cases seeking review of a denial of social security benefits [are] assigned both to a district judge and a magistrate judge."

On October 29, 2009, the Magistrate Judge issued a Report and Recommendation [20] recommending that the Court grant Defendant's Motion for Summary Judgment [18] and deny Plaintiff's Motion for Summary Judgment [15]. On November 11, 2009, Plaintiff timely filed an Objection [21] to the Report and Recommendation. Defendant failed to filed a Response. Those filings are now before

1

the Court.

For the reasons that follow, the Court **REJECTS** the Magistrate's Report and Recommendation to Grant Defendant's Motion of Summary Judgment [20], **DENIES** Defendant's Motion for Summary Judgement [18], **GRANTS IN PART** Plaintiff's Motion for Summary Judgment [15], and **REMANDS** the case to a different Administrative Law Judge to consider Plaintiff's application in a manner consistent with this opinion.

## I. STANDARD OF REVIEW

Judicial review of facts found by the Administrative Law Judge ("ALJ") is limited to an evaluation of whether those findings are supported by substantial evidence and whether the proper legal standards were applied. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Court must examine the administrative record as a whole. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). However, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court must affirm an ALJ's decision if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even if the record could support a different conclusion. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

Under 28 U.S.C. § 636(b)(1), a magistrate judge's orders shall not be disturbed unless "found to be clearly erroneous or contrary to law." *U.S. v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). The "clearly erroneous" standard mandates Court affirm the Magistrate's decision unless, after reviewing the entirety of the evidence, it "is left with the definite and firm conviction that a mistake has been committed." *Sandles v.*

*U.S. Marshal's Service*, 2007 WL 4374077 at *1 (E.D. Mich. 2007) (*citing U. S. v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The test is:

> not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one.

*Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.1985).

This Court reviews *de novo* any objections to a Magistrate's Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Plaintiff has filed an Objection, and his assignments of error are considered below.

## II. PLAINTIFF'S OBJECTIONS

### A. Substantial Evidence

The ALJ concluded that substantial evidence demonstrated Plaintiff was not totally disabled, as he retained the residual functional capacity to perform sedentary work providing a sit-stand option. In his Report and Recommendation, the Magistrate concluded that the ALJ's finding should be affirmed. Plaintiff objects, arguing that the Magistrate erred when he concluded the ALJ's decision was consistent with the specific limitations imposed by Plaintiff's examining physicians. Plaintiff asserts he suffers from totally disabling pain and requires frequent rest periods throughout the day. Plaintiff cites various portions of the record in support of his assertions.

3

The Sixth Circuit has held that an ALJ's selective inclusion of only portions of a report which cast Plaintiff in a "capable light" but excludes those portions which present Plaintiff in a "less than capable light" is an error, because it suggests the ALJ has only considered part of the report in formulating his conclusion. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-241 (6th Cir. 2002); *see also Fanning v. Shalala* 1994 WL 706653 at *7 (W.D. Mich. 1994) ("In reaching his conclusion, the ALJ selectively evaluated portions of the record to the exclusion of others. As a result, this court cannot conclude that the ALJ's determination was supported by substantial evidence"); *Hopkins v. Comm'r of Soc. Sec.*, 2009 WL 1360222 at *14 (S.D. Ohio 2009) ("The ALJ may not ignore evidence favorable to plaintiff. Rather, he must articulate the evidence accepted or rejected when making a disability finding to enable the reviewing court to engage in meaningful judicial review . . . When, as in this case, the ALJ fails to mention rejected evidence, the Court is unable to determine if significant probative evidence was not credited or simply ignored").

In this case, there were several instances throughout the ALJ's decision which, when viewed together, evidence the ALJ did not consider the *entire* record. Rather, he selectively included portions of reports that suggested Plaintiff is capable of doing sedentary work with a sit-stand option, yet failed to include imperative portions which favored Plaintiff's position that he suffers from limitations that further restrict his

ability to work.

In support of the ALJ's decision to deny Plaintiff's disability claim, the ALJ relied on various pieces of evidence, including a radiological study of Plaintiff's "lumbar spine performed on May 1, 2004 [that revealed] ***normal alignment*** of vertebral bodies, maintained disc spaces and soft tissue areas within normal limits." *See* Tr. at 23, *citing* Tr. at 234. The ALJ also cited "[a]n MRI of the claimant's left knee performed on May 5, 2004 [that revealed] evidence of ***slight*** degenerative changes in the lateral meniscus and evidence of very small joint effusion." *See* Tr. at 23. Dr. Nowaczyk referenced this evidence in a report dated May 5, 2004. *See* Tr. at 428-431.[1] Although the ALJ also referenced and relied on this evidence in his decision, he failed to mention that Dr. Nowaczyk's report stated the following:

- "These pain medications do interfere with his employability due to their effects on his sensorium." *See* Tr. at 429.

- "There is objective evidence of painful motion, spasm, weakness, and tenderness over the lumbar spine. Neurological exam, patient does have slightly decreased sensation below the knee on both right and left to pinprick." *See* Tr. at 429.

- "Patient does show instability . . . being greater than 5mm of motion and

---

[1] Although Plaintiff maintains in his objections that the ALJ failed to consider the VA's finding regarding Plaintiff's disability, the ALJ made multiple references to the findings made by physicians in the 287 pages of medical records from the VA that were included in the record. Accordingly, that objection lacks merit.

5

evaluation of the anterior and posterior cruciate ligaments, medial and lateral collateral ligaments show no motion... There is some positive point tenderness. The knee is painful on motion with instability as described." *See* Tr. at 429.

- "Additional limitations following repetitive use, patient cannot perform repetitive use. The *flare-ups occur approximately three times per month* at which time, the patient uses Motrin. *He is limited an additional 80% due to pain*, fatigue, weakness, and lack of endurance. There is instability of the knee present on examination." *See* Tr. at 429-430 (emphasis added).

- "Patient evaluation of the hand is also performed. Patient does show additional limitation and dexterity he has of the right index finger. Evaluation of the hand as a unit, the hand does have decreased dexterity and pushing, pulling, and twisting . . . He has decreased flexion [in his right index finger], 60/80 degrees." *See* Tr. at 430.

- "Additional limitation of motion, *additional function impairments during flare-ups are greater than 50%.*" *See* Tr. at 430 (emphasis added).

- "[I]t is the opinion of the medical examiner with the information available to me at this time that there are medical restrictions on ordinary activities due to a service-connected back, left knee, right index finger, and hypertension that would prevent that from performing physical acts required by employment." *See* Tr. at 431.

Additionally, in support of his decision to deny Plaintiff's disability claim, the ALJ relied on two radiology reports performed on January 28, 2003. *See* Tr. at 166, 167. The ALJ stated, "x-ray studies of the claimant's left knee . . . reveal very minor degenerative changes, with no significant abnormalities. In addition, x-rays of the claimant's lumbar spine performed on the same date suggest some evidence of spurring in the lower thoracic vertebrae, but no evidence of any significant

6

abnormality." *See* Tr. at 22, *citing* Tr. at 166, 167. However, the ALJ ignored that on the same day of that hospital visit, Dr. Nowaczyk physically examined Plaintiff. *See* Tr. at 169-171. Dr. Nowaczyk stated that "[p]atient does have limited range of motion in both flexion and extension at the knee joint" and that at his spine, "there is some tenderness to deep palpation over L4-5." *See* Tr. at 170. Dr. Nowaczyk also noted that Plaintiff's gait is altered due to his problems with the L4-5 and left knee and assessed that Plaintiff had a L4-5 disc herniation. *See* Tr. at 170.

Furthermore, in support of his conclusion that Plaintiff is capable of doing sedentary work with a sit-stand option, the ALJ relied on a radiological study of Plaintiff's left hip performed on January 21, 2004. The ALJ stated that this study of the hip was described as "normal." *See* Tr. at 23, *citing* Tr. at 236. The x-ray performed on Plaintiff's hip appears to have been ordered in the report by nurse practitioner Pamela Spencer after an examination done on January 21, 2004. *See* Tr. at 236, 457. Although the ALJ relied on the results of the x-ray, he failed to mention that Spencer's report also made additional findings regarding Plaintiff, which include:

- "Musculoskeletal, spinous process tenderness noted L4-5 bilaterally with muscle spasms noted lumbar spine with range of motion testing." *See* Tr. at 457.

- "Patient unable to complete range of motion testing left hip due to increased pain." *See* Tr. at 457.

- "L5-S1 disease herniation with radiculopathy, lower extremities/[s]ignificant decreased daily functioning activities." *See* Tr. at 457.

Finally, in support of the ALJ's decision to deny Plaintiff's disability claim, the ALJ relied on a report by Dr. Beltran dated September 28, 2004. *See* Tr. at 359-360. Although the ALJ stated, "[s]pecifically, Dr. Beltran notes that the claimant demonstrated *no evidence of* motor deficits or *paresthesias*" (*See* Tr. at 23, *citing* Tr. at 359 (emphasis added)), Dr. Beltran's report explicitly stated, "[Claimant's] initial evaluation was unrevealing. However there was some *paresthesias identified* on examination." *See* Tr. at 359 (emphasis added). The ALJ also failed to mention Dr. Beltran's report stated that Plaintiff experienced "some pain with lower extremity testing and lumbar spine with some decrease in range of motion" and "reflexes were diminished." *See* Tr. at 360.

Thus, the ALJ failed to consider the full record and entirety of the reports he relied on in reaching his determination that Plaintiff retained the residual functional capacity to perform a significant range of sedentary activity that requires lifting and carrying up to ten pounds, sitting for up to six hours, and standing and walking up to two hours during an eight hour work day. As a result, this Court is unable to conclude that his determination was supported by substantial evidence.

Since the Appeals Council has already remanded the case to the ALJ for further consideration, thus giving him two opportunities to review Plaintiff's application for benefits, this Court concludes that upon remand, it is appropriate that this matter be referred to a different ALJ. On remand, the new ALJ is to render a decision which takes into account the record as a whole and does not selectively rely on only certain findings in reports without explaining why other portions of the same report are to be rejected.[2]

**B. <u>Credibility</u>**

Plaintiff objects that the ALJ failed to properly assess his credibility. Plaintiff maintains that the pain he experiences impacts his residual functional capacity and restricts him from performing the range of sedentary work that the ALJ concluded he could perform.

As the Sixth Circuit has noted, "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the

---

[2] Plaintiff also asks this Court in his objections to find that Dr. Foster's opinion regarding Plaintiff's condition be given deference, as Dr. Foster is allegedly his treating physician. Even if this Court were to conclude that he was Plaintiff's treating physician, the ALJ properly found that Dr. Foster's opinion regarding Plaintiff's functional capacity was not entitled to deference since his determination stated in his June 30, 2003 letter was not supported with objective medical evidence in the record *during the relevant time period* eligibility for benefits were assessed.

9

claimant." *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). In assessing credibility:

> Social Security Ruling 96-7p . . . requires the ALJ [to] explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.' In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

*Id.* at 248; *see also Mendoza v. Astrue*, 2009 WL 5062103 at *6 (S.D. Ohio 2009) (Court remands case to ALJ after finding that proper credibility findings were not made).

In initially making his determination regarding disability, the ALJ found that Plaintiff's allegations regarding his pain and limitations were not totally credible. Upon review of the decision by the Appeals Council, the case was remanded to the ALJ with the order that the ALJ's decision "contain specific reasons for the credibility findings, supported by the evidence of record, and [the decision] must be sufficiently specific to make clear the weight given the individual's statements and the reason for that weight." *See* Tr. at 37.

Following the remand, the ALJ issued a decision barely addressing the issue of credibility, simply stating in a single sentence that "[a]fter considering the evidence

10

of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *See* Tr. at 24-25. The ALJ does not express to the Court the part(s) of the record the ALJ considered pertinent to assessing Plaintiff's credibility. Plaintiff's credibility is particularly relevant in this case since his subjective complaints regarding the frequency, intensity, and limiting effects can serve to support the objective evidence in the record.[3]

As noted above, Dr. Nowaczyk's report states that "[t]he flare-ups occur approximately three times per month . . . [and Plaintiff] is limited an additional 80% due to pain, fatigue, weakness, and lack of endurance." *See* Tr. at 429. Furthermore, the record indicates that another physician, Dr. Haddad, stated that Plaintiff's back "exacerbations . . . occur one to three times a month." *See* Tr. at 256. These doctor's reports are important because they provide guidance on the limiting effects and frequency of Plaintiff's pain, and call into question the ALJ's assessment of Plaintiff's

---

[3] Moreover, the Magistrate Judge relied heavily on the ALJ's credibility findings in recommending that this Court affirm the ALJ's decision, noting that although he agreed with the ALJ's finding that there was evidence in the record that Plaintiff was totally disabled and that his testimony was fully credible, the ALJ's decision was not to be affirmed because "special deference is owed to the credibility findings of the ALJ . . . ." *See* Report and Recommendation at 7. While deference is typically given to the ALJ's findings, such deference is not appropriate where the credibility findings lack the specificity required by SSR 96-7p.

residual functional capacity. The vocational expert testified that if Plaintiff requests to be off work, or leaves work early *once every two weeks*, then he is not eligible for the any of the jobs she identified. *See* Tr. at 600. It would then follow that if Plaintiff suffers flare-ups approximately three times a month, then he would be unable to perform the jobs identified by the vocational expert.

A full assessment of Plaintiff's residual functional capacity requires specific credibility findings. The ALJ erred in failing to explain his credibility determinations with specificity. Therefore, the Court remands this case to a new ALJ to reassess Plaintiff's credibility and support his specific credibility findings with evidence, as well as reevaluate if any sedentary work is available for Plaintiff.[4]

## III. CONCLUSION

Having reviewed the administrative file, the motions, the Magistrate's Report and Recommendation, and Plaintiff's objections, for the reasons stated above, this Court **REJECTS** the Magistrate's Report and Recommendation [20], **DENIES** Defendant's Motion for Summary Judgment [18], **GRANTS IN PART** Plaintiff's

---

[4] Additionally, in assessing the residual functional capacity, the ALJ is to consider Plaintiff's obesity and use of assistive devices to ambulate, as "the residual functional capacity assessment must be based on all of the relevant evidence in the case record . . . ." *See* Tr. at 37. The ALJ noted in his decision Plaintiff's use of such devices, but is unclear how such devices impact the sit-stand at will option.

Motion for Summary Judgment [15], and **REMANDS** this case to a new Administrative Law Judge to render a decision which includes all of the limitations indicated by Plaintiff's physicians, specific reasons supported by evidence in the record regarding Plaintiff's credibility finding, and a determination as to whether Plaintiff is able to perform sedentary work.

    **IT IS SO ORDERED.**


        S/ARTHUR J. TARNOW
        Arthur J. Tarnow
        United States District Judge

Dated: March 15, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 15, 2010, by electronic and/or ordinary mail.

        S/LISA M. WARE
        Case Manager